(23 Misc. Rep. 553.)

MILNE v. NORTHWESTERN LIFE ASSUR. CO.

(Supreme Court, Special Term, New York County.    May, 1898.)

1. LIFE INSURANCE—SUBSTITUTION OF POLICIES.
   Where four original life insurance policies had been surrendered by in-
   sured in exchange for one policy to cover them all, which stated that it
   was a substitute for such policies, and it had been so treated by insured,
   and the beneficiary treated it as the existing insurance, by making and
   filing her proofs of loss under it, the beneficiary cannot successfully claim.
   after the death of insured, that the original policies are still in force, and
   not covered by the surrender.

2. SAME—LAPSES—AGREEMENTS.
   The beneficiary of a life policy, who compromised the claim, after the
   death of insured, at a quarter of the face value, on the ground, as urged
   by the company, that false warranties were made by insured in his appli-
   cation for reinstatement after his policy had lapsed, cannot claim that
   the policy in fact had never lapsed, in the absence of any fraud or misrep-
   resentations, and where the adjustment had been acted on by both the
   insurer and the beneficiary.

3. SAME—COMPROMISES—EFFECT.
   A company, by claiming that a policy was void for breach of a warranty
   in the application of insured, as to his health, compromised the claim with
   the beneficiary (the wife) by giving her a fourth of its face value.    She
   had talked the matter over with a friend, and had acted on the advice of
   her attorney.    There was nothing to show that the company had acted
   in bad faith in giving or concealing information, or that it had misled
   defendant in regard to the health of insured.    *Held*, that the compromise
   is binding on the beneficiary.

Action by Harriet E. Milne against the Northwestern Life Assur-
ance Company.    Judgment for defendant.

J. K. Hayward and Charles Donohue, for plaintiff.
David Murray and Clifford W. Hartridge, for defendant.

HISCOCK, J.    This action is brought to set aside, as fraudulent, a
settlement made by the plaintiff as beneficiary of certain insurance
issued by the defendant upon the life of her husband, Charles Milne,
by which settlement she accepted the sum of $2,500 in full of in-
surance amounting to $10,000; also, to recover against defendant
the full amount of said insurance.    The following facts, among others,
were established by the evidence:    Upon July 8, 1882, and April 24,
1888, the defendant (then transacting business as the Northwest-
ern Masonic Aid Association) issued to Charles Milne four certificates,
whereby, in substance, under certain conditions, it promised to pay to
his wife, the plaintiff, upon his death, the aggregate sum of $10,000.
Subsequently, and on or about February 11, 1892, said association
issued one certificate upon the life of and to said Milne for the sum of
$10,000, and which said certificate, it is claimed by defendant, was
in the place of, and retired, said four certificates above mentioned.
On or about December 16, 1895, said Milne made an application to
said association for reinstatement under said last-mentioned certifi-
cate for $10,000 upon the ground and theory that the same had lapsed,
and which reinstatement was granted by said association and accepted
by said Milne.    In connection with, and as part of, said application
for said reinstatement, said Milne made certain agreements and war--

ranties, and, among others, as to his freedom from sickness, and from the excessive use of intoxicating liquors.    Said Milne died September 26, 1897.    The defendant entered upon certain investigations, and acquired certain information and reports, with reference to his physical condition for some time prior to his death, and at and preceding the time of the aforesaid application for reinstatement.    Shortly after his death, defendant's agent sought and interviewed the plaintiff; claiming, in substance, that certain of the warranties and agreements made upon such application for reinstatement were false, that the insurance was therefore void, and offering $2,500 in settlement of the claim, which was accepted, and which it is now sought to set aside.    I will consider separately three propositions urged by plaintiff's counsel as reasons why this relief should be granted.

1. It is urged, as I understand it, that the four certificates of insurance originally issued to plaintiff's husband were not exchanged for and replaced by the last certificate for $10,000; that defendant had no right to make such a change; that said original policies are still in full force and effect, and were not covered by the settlement made between plaintiff and defendant.    The plaintiff, in her complaint, sets out said policies as the basis of the recovery now asked for.    If this theory were correct, it is difficult to see what occasion there would be for this action.    If the original certificates are still in force, plaintiff's remedy would seem to be an action in the ordinary form upon them, and there would be no occasion to attack the settlement of another policy, which it is claimed was in no wise related to them.    I do not, however, regard plaintiff's claim, in this respect, as well founded.    It is beyond question, upon the evidence, that the certificate for $10,000 was issued in the place of, and to retire, said original certificates.    The old certificates were delivered up to the company.    The new certificate expresses upon its face that it was in place of them, and during all of the years succeeding its issue it was so treated by plaintiff's husband.    In addition to that, plaintiff herself recognized it as the existing insurance, by making and filing her proofs of loss against the defendant thereon.

2. It is urged that there was in 1895 no valid lapse of the insurance issued by defendant, and that, therefore, there was no occasion or consideration for the application made by plaintiff's husband for reinstatement, and for the agreements and warranties therein which were subsequently made the basis of defendant's claim to nonliability, and of the settlement now attacked.    I regard that question, also, as foreclosed against plaintiff.    There was manifestly a claim that Dr. Milne's insurance was lapsed.    This claim may have been well founded, or, as urged by plaintiff's counsel, invalid and without foundation.    It does not appear whether there was any contest between the insurer and the insured upon this question; but, without any fraud or misrepresentation, so far as appears, the matter was adjusted by the insured making an application for reinstatement, and the insurer granting such application.    This was an adjustment of the matter, and of any controversies to which it may or might have given rise; and, that adjustment having been recognized and acted upon by both of the parties thereto down to the time of the death

of the insured, I do not believe that its legality can now be questioned,—at least, upon the evidence introduced in this case.

3. I come now to that reason urged by plaintiff which, as it seems to me, is most entitled to consideration of all of those raised in her behalf, viz. the alleged invalidity of the settlement. These facts, which are substantially undisputed by plaintiff or her evidence, lea up to and attended the making of the settlement in question: One Bronk, after the death of Dr. Milne, made an investigation of his prior health, as it was at the time of his application for reinstatement; and he acquired certain information, which was imparted in a letter sent to the defendant. Thereafter one Smith, as the representative and adjuster of the defendant, came on to New York, and saw Bronk, and also one Dr. Bleyer, who was and is in no wise connected with the defendant, but who was acquainted with the Milnes. Through him an appointment was made between Smith and Mrs. Milne. Smith, Bronk, and Dr. Bleyer called upon Mrs. Milne. The letter was read to her, and the claim made by Smith in behalf of the defendant, in substance, that the policy had lapsed in 1895; that her husband was reinstated upon certain agreements as to his health; that those agreements were untrue, etc.; that, therefore, the company was not bound upon the policy, but would pay $2,500 to settle the claim. Mrs. Milne at first agreed to make such settlement, but then concluded that she wanted to talk with a friend. She went, accompanied by the other persons named, and talked with this friend, who in turn advised her to consult with a lawyer. She then consulted such attorney. The representative of the insurance company went with her, and stated more or less fully its claims. Finally the attorney advised her to make the settlement, which was done. In addition to this, there is evidence in behalf of the defendant (some of it more or less disputed) that Dr. Milne had been sick, as reported to it, and that the plaintiff made certain admissions in regard to this sickness, and in regard to his habits in the use of intoxicants. There is no sufficient evidence that defendant's agents intentionally or wrongfully misrepresented the facts about the sickness of the insured. After considering the foregoing, and all of the other facts in the case, I am unable to agree with plaintiff's contention that defendant had been guilty of such fraud and misrepresentation as entitled her to have her settlement with it set aside. It is not, of course, a sufficient basis for such relief, even if it be assumed that her settlement has been ill advised or injudicious, or that she could probably recover more money in a lawsuit, or that defendant's claim of a defense to the policy was not well founded, or that the alleged sickness and habits of the insured were not entirely as claimed by it. The question is whether the defendant, by active, intentional, fraudulent misrepresentations, or suppression of facts, contrary to its obligation to plaintiff, induced her to make the settlement. Upon this subject there is nothing to indicate that defendant did not act in good faith, or that it misled plaintiff in regard to her husband's condition. His condition of health at the time in question, and upon which defendant made its claim of nonliability, was not a fact peculiarly within the knowledge of the defendant. But, upon the other hand, it was a fact about

which the plaintiff must have known much more than did the defendant. It is difficult to see how the defendant could very well mislead or deceive the plaintiff upon the subject of her husband's sickness or freedom therefrom. Neither does it appear that plaintiff, through the persuasion or coercion of defendant, entered into the settlement precipitately. She advised with those whom she thought capable of giving advice, including an attorney; and, after availing herself of such advice and safeguards, she made the settlement in question. I am unable to see how the court, upon the evidence produced, can relieve her from this act in this action.

In accordance with these conclusions, findings or decision and judgment may be prepared by defendant's attorneys, with costs, and submitted to plaintiff's attorneys, who may, if dissatisfied with the same, submit proposed amendments. Ordered accordingly.